IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW FLAGGERT, Individually and as Next Friend of DANIEL FLAGGERT, a Minor, and LISA FLAGGERT | § § § § § | |
| Plaintiffs, | § § | Civil Action No. _____ |
| vs. | § § | JURY TRIAL |
| REMINGTON ARMS COMPANY, LLC, | § § § § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

1. MATTHEW FLAGGERT, individually and as next friend of his minor son DANIEL FLAGGERT, and LISA FLAGGERT file Plaintiff's Original Complaint against REMINGTON ARMS COMPANY, LLC, and respectfully show as follows:

## PARTIES

2. Plaintiff Matthew Flaggert and his wife LISA FLAGGERT reside in Allen, Texas (Collin County, Texas). Daniel Flaggert is a minor child of Mr. and Mrs. Flaggert

3. Remington Arms Company, LLC ("Remington Arms") is a foreign limited liability corporation, which is doing business in the State of Texas:

| REMINGTON ARMS COMPANY, LLC | |
|---|---|
| Texas Taxpayer Number | |
| Mailing Address | PO BOX 700<br>MADISON, NC 27025-0700 |
| Right to Transact Business in Texas | ACTIVE |

1

| | |
|---|---|
| State of Formation | DE |
| Effective SOS Registration Date | 11/22/1993 |
| Texas SOS File Number | 0009787306 |
| Registered Agent Name | C T CORPORATION SYSTEM |
| Registered Office Street Address | 1999 BRYAN ST., STE. 900 DALLAS, TX 75201 |

**JURISDICTION AND VENUE**

4. This court has diversity jurisdiction over this case and the damages sought are within the jurisdictional limits of this court.

5. Venue is proper in the Northern District of Texas because the accident occurred in the Northern District of Texas.

**FACTUAL BACKGROUND**

6. On January 3, 2013, at approximately 4:40 p.m., Matthew Flaggert's Remington Model 700 fired in the absence of trigger activation when he closed the rifle's bolt. He and his son were in a deer blind, and the sound of the firearm damaged the hearing of both Matthew Flaggert and his son Daniel.

7. Remington Arms engages in the business of designing, manufacturing, assembling, distributing and selling firearms, and designed, manufactured, distributed, sold, and placed into the stream of commerce the Remington Model 700 bolt action rifle including the action, fire control system, and safety (hereafter "the rifle"), knowing and expecting that the rifle would be used by consumers and around members of the general public.

8. Most of the Remington Model 700 rifles contain a defective and unreasonably dangerous "Walker" fire control system that may (and often does) fire without trigger activation upon release of the safety, movement of the bolt, or when jarred or bumped. Remington

Arms has designed one or more new trigger mechanisms that are a safer alternative design.

9. Plaintiffs bring this action to recover damages from Defendant arising from Matthew Flaggert and Daniel Flaggert's personal injuries (hearing loss, generally) caused by this incident. Plaintiffs' damages include mental and physical pain and suffering, loss of earnings, and other general and special damages in an amount to be determined by the jury at the trial of this action.

## STRICT LIABILITY

10. Remington Arms is strictly liable to Plaintiffs for selling a Remington Model 700 bolt-action rifle through a Wisconsin dealer because it was not merchantable and reasonably suited to the use intended at the time of its manufacture or sale. Plaintiff Matthew Flaggert reasonably expected that the Remington Model 700 purchased used in Texas would not fire unless the trigger was activated. Remington Arms is strictly liable for manufacturing and selling the Remington Model 700 bolt action rifle with a defective trigger that was the proximate cause of personal injuries sustained by Plaintiffs.

11. The Remington Model 700 bolt-action rifle was in a defective and dangerous condition because Remington Arms had actual or constructive knowledge that the rifle was dangerous to users, specifically, that the rifle has a propensity to unexpectedly discharge without pulling the trigger. The risk was known or, at a minimum, reasonably foreseeable by Remington Arms.

12. Plaintiff had no knowledge of this defective condition and had no reason to suspect the rifle was unreasonably dangerous prior to the inadvertent discharge.

13. Remington Arms' defective design was a direct and proximate cause of Plaintiffs' injuries, and Plaintiffs are entitled to recover the damages from Remington Arms.

## NEGLIGENCE

14. Remington Arms was negligent in the design and manufacture of the Model 700 rifle. Remington Arms acted unreasonably in selecting the design of the Model 700 rifle, specifically the trigger mechanism, given the probability and seriousness of the risk posed by the design, the usefulness of the rifle in such a condition, and the burden on Defendant to take necessary steps to eliminate the risk.

15. Remington Arms knew or should have known that the Remington Model 700 rifle was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner it was intended to be used, and for foreseeable misuses of the rifle.  Remington Arms' negligence was a proximate cause of the gun misfiring and injuring Mr. Flaggert and his son.

16. Remington Arms knew and/or should have known how to equip the rifle with an adequate fire control system to prevent the rifle from firing without a trigger pull. Remington Arms failed to equip the rifle with an adequate fire control system to prevent injuries.

17. Remington Arms has actual and/or constructive knowledge of the problems with its Model 700 rifle at the time it was sold, in particular the rifle's propensity to unexpectedly discharge without pulling the trigger.

18. Remington Arms owed Mr. Flaggert a duty to use reasonable care when it designed, manufactured, and the marketed the rifle.  Remington Arms violated its duties.

19. Each of the acts and omissions mentioned above was a proximate cause of the injuries suffered by Plaintiffs.

## **EXEMPLARY DAMAGES**

20. Remington Arms has known about the defect in its Model 700 rifle for sixty years, but it continues to put profits over people and safety. Remington is aware of approximately 10,000 documented complaints about its rifles discharging without trigger activation. Numerous jury verdicts have found the gun defective.

21. As early as January 25, 1990, an internal Remington Arms memo reveals that "[t]he number of Model 700 rifles being returned to the factory because of alleged accidental firing malfunctions is constantly increasing. 170 were returned to Product Service for examination in 1989 with various accidental firing complaints. To date this year, 29 have been returned."

22. Ignoring thousands of customer complaints and the admissions of its own engineers that the rifle design may lead to dangerous situations, Remington Arms refuses to recall its rifles or warn its customers.

23. Remington Arms acted with willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care that raises a presumption of conscious indifference to consequences. Remington Arms' actions, when viewed objectively from the standpoint of the actor at the time of the occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Remington's consumers and the general public, including Mr. Flaggert.

24. No government agency can force Remington Arms to recall its product, and Remington Arms has made its own employees aware of that fact. Remington Arms contemplated

alternative designs and recalls but decided that they were too expensive. Remington Arms has chosen to defend its defective product in court rather than implement a new design that would save lives. Remington Arms' decision to place profit over people's safety is wrong. Punitive damages should be awarded against Remington Arms to prevent its improper conduct in the future.

## DAMAGES

25. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff Matthew Flaggert, his wife Lisa Flaggert, and his minor child Daniel Flaggert, have incurred the following damages:

    a. Reasonable medical care and expenses in the past;

    b. Reasonable and necessary medical care and expenses which will, in all reasonable probability, be incurred in the future;

    c. Physical pain and suffering in the past;

    d. Physical pain and suffering in the future;

    e. Mental anguish in the past;

    f. Mental anguish in the future;

    g. Physical impairment in the past;

    h. Physical impairment which will, in all reasonable probability, be incurred in the future;

    i. Loss of earnings in the past; and

    j. Loss of consortium

26. By reason of the above, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## JURY DEMAND

27. Plaintiffs demand a jury.

## PRAYER

28. Plaintiffs respectfully pray that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court, exemplary damages, together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law, post-judgment interest at the legal rate, costs of court, and all such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

HIGHTOWER LAW GROUP, PLLC

By: /s/ Jeffrey W. Hightower, Jr.
Jeffrey W. Hightower, Jr.

4144 N. Central Expwy, Suite 1230
Dallas, Texas 75204
phone: 214.580.9800
fax: 214.580.9804
jeff@hightowertrials.com

*Attorney for Plaintiff*