```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE NORTHERN DISTRICT OF TEXAS

 3                          DALLAS DIVISION

 4
     MATTHEW FLAGGERT,           )          3:14-CV-4554-M
 5   Individually and as Next    )
     Friend of DANIEL FLAGGERT,  )
 6   a Minor, and LISA FLAGGERT, )
                  Plaintiffs,    )
 7                               )
                                 )          DALLAS, TEXAS
 8   VS.                         )
                                 )
 9                               )
     REMINGTON ARMS COMPANY,     )
10   LLC,                        )
                  Defendant.     )          May 11, 2015
11

12

13       TRANSCRIPT OF HEARING ON MOTION FOR SUMMARY JUDGMENT AND
                  MOTION TO APPLY NEW YORK LAW

14           BEFORE THE HONORABLE BARBARA M.G. LYNN

15               UNITED STATES DISTRICT JUDGE

16

17
     A P P E A R A N C E S:
18

19

20   FOR THE PLAINTIFFS:      MR. JEFFREY W. HIGHTOWER, JR.
                              Hightower Law Group, PLLC
21                            4144 N. Central Expressway
                              Suite 1230
22                            Dallas, Texas  75204
                              jeff@hightowertrials.com
23                            (214) 580-9800

24

25
```

```
 1   FOR THE DEFENDANT:              MR. JAMES DAVID JORDAN
                                     Munsch Hardt Kopf & Harr, PC
 2                                   3800 Lincoln Plaza
                                     500 N. Akard Street
 3                                   Dallas, Texas  75201
                                     jjordan@munsch.com
 4                                   (214) 855-7543

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18
     COURT REPORTER:                 MR. TODD ANDERSON, RMR, CRR
19                                   United States Court Reporter
                                     1100 Commerce St., Rm. 1625
20                                   Dallas, Texas  75242
                                     (214) 753-2170
21

22

23          Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

```
 1                  HEARING ON MOTION FOR SUMMARY JUDGMENT AND

 2                  MOTION TO APPLY NEW YORK LAW - MAY 11, 2015

 3                          P R O C E E D I N G S

 4              THE COURT:  Good morning.

 5              MR. HIGHTOWER:  Good morning.

 6              MR. JORDAN:  Good morning.

 7              THE COURT:  Give me just a second to pull my notes

 8      here.

 9              (Pause)

10              THE COURT:  All right.  Thank you.  The Court is here

11      to conduct a hearing on two related motions in Flaggert versus

12      Remington, Case Number 14-4554.

13              The motions are the motion for summary judgment filed

14      by the Defendant and the Plaintiffs' motion to apply New York

15      law.  The issue in the case is whether the Texas statute of

16      repose applies to the case; if it does, whether the exception

17      for a written warranting applies to -- as an exception to the

18      application of the statute of repose and whether in any case

19      the Court should apply New York law, applying the restatement

20      approach to that issue.

21              Is that a fair summary of the issues?

22              MR. HIGHTOWER:  It is, Your Honor.

23              MR. JORDAN:  Yes, Your Honor.

24              THE COURT:  All right.  Let me have appearances,

25      please, for the Plaintiff first.
```

```
 1            MR. HIGHTOWER:  Jeff Hightower.
 2            THE COURT:  Thank you.
 3            And for the defense?
 4            MR. JORDAN:  Jim Jordan for Remington, Your Honor.
 5            THE COURT:  All right.  Thank you.
 6            All right.  Now, when the case was pending in state
 7   court and dismissed, were these the same issues that were
 8   briefed?
 9            MR. HIGHTOWER:  Mostly.  Yes, Your Honor, they are.
10   We thought given the Texas Civil Practice and Remedies Code
11   71.031, we thought the federal court would be a better place to
12   have the choice of law argument because we don't believe that
13   the Texas legislature can direct this Court with regard to
14   which state's law should apply.
15            THE COURT:  Okay.  All right.  Well, I'm going to
16   give you-all sort of my preliminary assessment of the matter,
17   and then I will hear argument on it.
18            My preliminary assessment of the matter is that this
19   is a Texas law case, not a New York law case; that the statute
20   of repose applies and the exception doesn't apply.
21            And if that's the way I come out, Mr. Hightower, then
22   I'm going to grant the Defendant's motion and deny yours.  So I
23   have more than once, maybe a third of the time come out and
24   said something like that and then ruled differently, but it's
25   the exception, not the rule.
```

1          So I have read various papers that have been filed.

2     I think you-all did a very good job briefing it, but that's my

3     preliminary ruling -- view of it.

4          Okay.  So I guess we can start with the question of

5     New York law versus Texas law, if you would like.  And because

6     that's your motion, Mr. Hightower, I will hear from you on

7     that.

8          MR. HIGHTOWER:  Thank you, Your Honor.  May I stay at

9     counsel table, or should I --

10          THE COURT:  Can you hear him?  Can the court reporter

11     hear him okay?

12          THE REPORTER:  Yes, ma'am.

13          THE COURT:  Okay.  That's fine.

14          MR. HIGHTOWER:  Okay.  Judge, I think that if we are

15     to understand second restatement on conflicts of law, the folks

16     that drafted that wants the state that has the most significant

17     relationship to an issue, they want that law to govern.

18          And in this case, right up until the point that that

19     firearm went off, we've got decades and decades and decades of

20     history with regard to the design of the firearm.  I know we

21     don't have a post-sale duty to warn in Texas, and that's

22     perhaps another conflict with New York law.

23          After they designed this rifle, after they

24     manufactured it, for decades and decades they still did not

25     properly warn, and we have not alleged a failure to warn

 1   because there is a split of authority on whether that -- how
 2   that falls from a law standpoint.  But we've got this 60 years
 3   plus of activity in New York regarding a product.  And this is,
 4   again, a products liability case.  That state then under
 5   these -- under Section 62(a) through (g) and 145(a) through
 6   (d), that is the issue that this Court has to deal with in
 7   terms of a products liability case.
 8          Contributory negligence, we agree with Mr. Jordan.
 9   Texas law should apply to that if there's any conflict.  But
10   for the product at issue, New York law should apply for various
11   reasons, and I'll start with justified expectations.
12          If Remington is going to advertise as it does -- this
13   is under 2(d) -- 62(d) of the restatement.  If Remington is
14   going to advertise as it does that its firearms last a
15   lifetime, justified expectations would have New York law apply
16   and Texas law not apply so that they could be held accountable
17   if, in fact, one of its firearms which is supposed to last a
18   lifetime goes off 20 years after --
19          THE COURT:  But whose expectations?  The testimony in
20   the case from Matthew Flaggert is that he didn't hear anything.
21   He bought the gun used.  He's a Texas -- the Plaintiffs are all
22   Texans.  He bought the gun in Texas.  It went off in Texas.  He
23   didn't rely on any representations or warranties or statements
24   about the firearm, so he certainly didn't have any justified
25   expectations except if he generally thought Remington firearms

1   were good firearms.  He didn't rely on anything that was said

2   about the gun in issue.

3          MR. HIGHTOWER:  What I was discussing and describing

4   would be Remington's justified expectations and the general

5   public's expectations.

6          We don't find a reliance requirement in the exception

7   to the statute of repose, but that presupposes that the statute

8   of repose should apply to this case.  And my argument, Your

9   Honor, is that it should not because New York has a more

10  significant relationship, a closer relationship to the products

11  liability issue than the Plaintiffs have alleged.

12         THE COURT:  All right.  And to clarify, the issue is

13  that the firearm was manufactured in New York and that there is

14  a history of firearms manufactured by Remington in New York,

15  many of which have had, over a period of years, problems with

16  misfires.

17         MR. HIGHTOWER:  I agree with that summary and would

18  add that under 62(e), the basic policies underlying a

19  particular field of law, we simply -- in products liability

20  law, we don't ever want to get to the courtroom.  We want to

21  make safer products.  As a secondary goal we come to the Court

22  and say we failed in our first goal to make a safe product, so

23  we would like compensation for the victim.

24         But if we're talking about the first goal of tort

25  law, which includes products liability law, we are trying to

1    make safer products.  And the Texas legislature has, I think,

2    thwarted that.  I think that they have thwarted that by

3    including the statute of repose especially where you have a

4    product that is known to last a lifetime; you have a product

5    that Remington says will last a lifetime.  We don't have an

6    express warranty.  We would argue that the legislature didn't

7    use warranty, but the Court has already --

8                THE COURT:  I was careful with the way I put it.  I

9    think the cases interpreting that have interpreted the language

10   as a warranty, but I was careful to say a written warrant

11   because of your argument.

12               MR. HIGHTOWER:  In candor to the Court, Judge, if we

13   had a case that says what we believe, we certainly would -- we

14   certainly would have marshaled that case.

15               THE COURT:  Well, and the fact that the legislature

16   amended the statute to put in warrant instead of representation

17   suggests that there is a difference between a warrant and a

18   representation.  I mean, I think that's problematic for you in

19   terms of the argument that you're making.

20               MR. HIGHTOWER:  But I think it -- I think it cuts

21   both ways, Your Honor.  If they were there and they knew that

22   they had already said representation and they wanted to say or

23   they wanted to use the word "warranty" to suggest the legal use

24   of the word "warranty," they should have and could have done

25   that at that time.  The fact that they didn't, I think, is

```
 1   significant.
 2           THE COURT:  Well, what do you -- what is the
 3   difference between a warrant and a representation if it's not
 4   that a warrant is giving him a warranty?
 5           I mean, I see your references to dictionary
 6   definitions of the word --
 7           MR. HIGHTOWER:  Sure.
 8           THE COURT:  -- but given the history, there has to be
 9   some difference between representing and warranting, and I
10   don't know what it could be other than to give a warranty.
11           MR. HIGHTOWER:  I think the difference, if we're on
12   the spectrum, a representation is not as strong as a warrant.
13   A warrant is a promise.  A warrant is something more
14   significant, perhaps less significant than a written warranty,
15   but a warrant in the dictionary sense is a promise.  A
16   representation may be a promise; it may not be a promise.  It
17   is just a representation.
18           I'm sympathetic to the Court's concern that
19   representation and warrant don't significantly differ and may
20   mean the same, but I think they do differ.  If we're there, I
21   think there is a difference.
22           THE COURT:  All right.  Thank you.
23           All right.  Mr. Jordan?
24           MR. JORDAN:  First of all, Your Honor, I wanted to
25   correct a mistake in our briefs.  I don't think it's pertinent
```

1    to anything that's been discussed, but we had a flat-out

2    mistake.  In our brief in response to Plaintiffs' motion to

3    apply New York law on page 10, we discussed the case called

4    *Schippers versus Mazak Properties*.  And we said that that

5    decision applied Texas law, and that's simply wrong.

6              The appellate court actually found that the trial

7    court would have been justified in determining that because the

8    plaintiffs were Florida residents, Florida had more interest in

9    applying Florida law than Texas had in applying Texas law.

10             THE COURT:  All right.

11             MR. JORDAN:  Not a critical case, but I don't go

12   around misrepresenting things to the Court.

13             THE COURT:  Okay.  I appreciate that.

14             MR. HIGHTOWER:  And he let me know that by e-mail.

15             MR. JORDAN:  Yeah, I e-mailed this morning to tell

16   him.

17             THE COURT:  All right.  Thank you.

18             MR. JORDAN:  Because I discovered it, to my horror,

19   over the weekend when I was cramming.

20             Without rehashing the issues that Court and counsel

21   just discussed, I want to raise one issue that's related, and,

22   that is, the representations that the Plaintiff has put in --

23   that the Plaintiffs have put in their brief that allegedly were

24   made by Remington, there are nine of them.

25             THE COURT:  Counsel, hold on for just a moment,

 1  please.  Sorry.

 2          (Pause)

 3          THE COURT:  Okay.  Sorry.  Counsel, thank you.

 4          MR. JORDAN:  That's all right.

 5          And by the way, the argument that just went kind of

 6  dealt with both motions, so I guess I'll deal with both if

 7  that's okay with the Court.  Do you want me to limit it to the

 8  New York?

 9          THE COURT:  I would rather start there, and then I'll

10  have you --

11          MR. JORDAN:  Okay.

12          THE COURT:  Because if it's not New York law, then

13  the only issue is whether the exception under state law

14  applies, so I'd just as soon address the New York law question

15  first.

16          MR. JORDAN:  With respect to the application of New

17  York law, Your Honor, our position is the Fifth Circuit has

18  already decided this.  There's a specific statute in Texas,

19  Section 71.03 of the Texas Civil Practice and Remedies Code.

20  We refer to this in our brief.  And a Fifth Circuit case called

21  *Hyde versus Hoffmann-La Roche* interpreted that statute.

22          And basically that statute trumps the most

23  significant relationship test.  It says that where the cause of

24  a personal injury took place in a different state but a Texas

25  resident brings suit for that injury in Texas, the action has

```
 1  to be begun within the time provided by the laws of Texas for
 2  beginning the action.
 3          And both the Fifth Circuit and the San Antonio Court
 4  of Appeals in Texas have determined that that refers to both
 5  statutes of repose and statutes of limitation, which means even
 6  if the Court were to accept all of this and say just because
 7  the one factor that relates this case to New York was the
 8  manufacture of the product 30 years ago in New York, it
 9  wouldn't make any difference to the outcome of this motion,
10  because the Texas plaintiff suing in Texas would still have to
11  comply with the Texas statute of repose under Section 71.03.
12          Now, we discussed this case and that section in our
13  response brief, and in their reply brief the Plaintiffs didn't
14  mention it or do anything to rebut that discussion and
15  argument.
16          THE COURT:  They don't like that statute.
17          MR. JORDAN:  Pardon me?
18          THE COURT:  They don't like that statute.
19          MR. HIGHTOWER:  Stipulated.
20          THE COURT:  They're not crazy about the restatement,
21  but they like it a lot better than 71.03.
22          MR. JORDAN:  And I don't want to drag this part out
23  either, but given if that didn't apply, even if there were no
24  Hyde, even if there were no Section 71.03, when you think about
25  the most significant relationship test, it's a pretty
```

1   common-sense test.  It sets out a lot of factors, but we're
2   really supposed to look at the big picture and say which state
3   has the most significant relationship.

4           Well, in this case the Plaintiffs were longtime Texas
5   residents.  Mr. Flaggert bought the rifle in Texas.  He hunted
6   with it for 18 years in Texas.  The accident happened on a
7   Texas ranch.  Remington, in an affirmative defense, contends
8   that it was his negligence at the time of the accident on the
9   Texas ranch that caused the gun to fire.  The injuries were
10  treated in Texas, and suit was brought in Texas.  That's all
11  Texas relationships.

12          Then if you look at the other side of the ledger, New
13  York, Remington is not a New York corporation.  Remington does
14  not have its principal place of business in New York.  There's
15  an allegation the product was manufactured in New York 30 years
16  ago, and for purposes of this motion the Court should accept
17  that as true.  And that's it.

18          If the Court were actually on those facts to
19  determine that New York law applies -- and by the way, we're
20  talking about New York substantive law.  This is a substantive
21  law analysis, not just a statute of repose analysis.  This
22  means all of New York substantive law would apply to this case.

23          But if the Court were to accept that, that's
24  essentially laying down a rule that the state of manufacture is
25  the state whose law must apply in virtually every circumstance,

1  because look at all the circumstances on the Texas side of the

2  ledger, and there's only one on the New York side of the

3  ledger.

4          So our position, Your Honor, is it's not -- even if

5  you put aside *Hyde* and you put aside 71.03, it's just not a

6  close call in this case, because otherwise courts here would

7  always in all products cases have to be looking, well, where's

8  the state of manufacture?  What if it's designed in one state

9  and manufactured in another state?  Which of those states' law

10  would apply?  I mean, it would be impossible for courts to

11  apply this in a reasonable fashion.

12          Thank you, Your Honor.

13          THE COURT:  All right.  Just a moment.

14          (Pause)

15          THE COURT:  So I want to talk for a moment about

16  71.031.  I just wanted to refresh my recollection on this.  I

17  want to direct this to Mr. Jordan.

18          So the statute -- I mean, the title of the statute is

19  "Act or Omission Out of State," so you're -- what you're

20  thinking about applying that statute to this case, is it -- is

21  the defective manufacture?

22          MR. JORDAN:  Yes, Your Honor.

23          THE COURT:  Okay.

24          MR. JORDAN:  Because the whole gist of the

25  Plaintiffs' argument is the real problem here was an act in

1    manufacturing the product.

2              THE COURT:  Okay.  So I want to just go through this

3    for a minute, and then I want to hear from Mr. Hightower about

4    it.

5              So this is certainly an action for damages for the

6    personal injury of a citizen of Texas.  And the wrongful act

7    occurred, according to the Plaintiffs' allegations, in New

8    York.  This state would give a right to maintain an action for

9    damages, but it would be subject to the statute of repose.  So

10   one would say that (a)(1) would have to be referring to the law

11   of New York.

12             Do you agree with that, Mr. Jordan?

13             MR. JORDAN:  Yes.

14             THE COURT:  Okay.

15             MR. JORDAN:  And I say that's not applicable.

16             THE COURT:  Well, it might be applicable because it

17   would be that a law of New York gives a right to maintain an

18   action for damages.

19             Okay.  The action is begun within the time provided

20   by the laws of this state for beginning the action?  No.

21             And three is inapplicable.

22             Four is inapplicable.

23             And (c) just says apply the rules of substantive law

24   that are appropriate under the facts of this case.

25             (B) says apply the law of this state, of Texas,

```
 1   except as provided in (a).
 2             So if (a)(1) applies, then the law of Texas does not
 3   apply.
 4             I just want to make sure I'm following you.
 5             MR. JORDAN:  I don't believe that's accurate, Your
 6   Honor.
 7             THE COURT:  Okay.
 8             MR. JORDAN:  If (a)(1) applies, it doesn't matter,
 9   because what the statute is dealing with is a Texas resident.
10             THE COURT:  (A)(1) doesn't apply because of Number 2?
11             MR. JORDAN:  Right.
12             THE COURT:  Okay.
13             MR. JORDAN:  That's what applies to a Texas resident
14   suing in Texas.
15             THE COURT:  All right.  Okay.  Thank you.
16             All right.  Mr. Hightower, let's begin with
17   addressing 71.031, because I didn't see you address that in
18   your papers.
19             MR. HIGHTOWER:  Sure, Your Honor.  Two points.  I
20   read the Hyde case.  The Hyde case struggled with this.  I
21   think the Hyde case did anyway.  There were some arguments
22   about substantive versus procedural.
23             This may be an oversimplification.  This may be too
24   easy, too easy of a way out of this, but if you look at (a), an
25   action for damages for the death or personal injury of a
```

1    citizen of this state, of the United States, or of a foreign

2    country may be enforced in the courts of this state.

3              To me, Your Honor, the Texas legislature is

4    addressing and discussing courts of this state, meaning Texas

5    state courts.  This is a federal court.  It happens to be in

6    Texas, but this is not a Texas court.  This is a court that

7    happens to be in the state of Texas, but it is not a state

8    court.

9              And so I think that *Hyde* -- the *Hyde* case missed

10   this.  Maybe some other cases have missed this.  I don't think

11   that this statute, the Civil Practice and Remedies Code

12   provision, even attempts to direct this Court with regard to

13   sort of a double statute of repose, if you will, meaning we've

14   gotten the statute of repose in an earlier section and if New

15   York law applies we come back and we say, well, it's all great

16   that you guys went through the second restatement conflicts of

17   law, but even if the result is New York law applies, we're

18   going to again assert that the Texas statute of repose should

19   apply.

20             I don't think that even if this statute works in a

21   state court, I don't think it's directed to this federal court,

22   and I don't think that it necessarily could be directed to this

23   federal court where this federal court sits in diversity,

24   because this court sitting in diversity, long-standing

25   tradition has the opportunity to decide which state's law

1    should apply under Texas choice of law rules.  And those choice

2    of law rules are the second restatement conflicts.  I don't

3    think that this somehow becomes part of Texas jurisprudence

4    that directs this court with regard to choice of law.

5              MR. JORDAN:  Your Honor, actually, this court is

6    required to apply Texas's conflict-of-law rules, which is an

7    item pointed out by the *Hyde* court on page 511.  It says -- and

8    I'll quote -- in diversity cases, a federal court must apply

9    federal procedural rules and the substantive law of the forum

10   state, including its conflict-of-law rules.  That Court pointed

11   out correctly that Section 71.03 is a statutory conflict-of-law

12   rule, and I think that's the end of the story.

13             THE COURT:  All right.  Thank you.

14             Mr. Hightower, is there anything else you want to say

15   on the issue of New York law?

16             MR. HIGHTOWER:  No, Your Honor.

17             THE COURT:  All right.  Okay.  I appreciate the

18   argument.  The Court is of the view that there are two bases

19   for the Court to conclude that Texas law applies here.

20             First, 71.031, for the reasons I have mentioned, I

21   believe it is applicable and would, as a result, apply the

22   Texas statute of repose.

23             I also find that under the Restatement Section 6 and

24   Section 145, that considering all of those factors and

25   particularly noting that the Plaintiffs are Texas residents;

1    the injury occurred in Texas; the Plaintiff, Mr. Flaggert,

2    Matthew Flaggert, used the rifle in issue for many years here

3    in Texas; there's an allegation of negligence on the part of

4    Mr. Flaggert asserted by Remington; the only relationship with

5    New York is the fact that the firearm was allegedly

6    manufactured there many years ago; that the firearm was bought

7    used by Mr. Flaggert in Texas.

8            The Court concludes by application of all of the

9    factors under Section 6 and Section 145 that the most

10   significant relationship is in Texas if the Court is to reach

11   that issue and not be bound exclusively by 71.031.

12           So the Court finds if it's 71.031 only that that

13   causes the Court to conclude Texas law applies.  If I'm to make

14   a most significant relationship analysis, then I do so and

15   conclude that Texas law applies under that analysis as well.

16           That leaves us with one issue and one issue alone,

17   and that is the applicability of the exception.

18           The statute of repose Section 16.012 of the Texas

19   Civil Practice and Remedies Code provides that except as

20   provided by Subsections (c), (d), and (d)(1), a claimant must

21   commence a products liability action against a manufacturer or

22   seller of a product before the end of 15 years after the date

23   of the sale of the product by the defendant.

24           I think it is undisputed -- and, if not,

25   Mr. Hightower, please correct me.  I think it's undisputed

 1    between the parties that the action was not commenced before

 2    the end of 15 years after the date of the sale of the product

 3    by the Defendant.

 4              MR. HIGHTOWER:  Correct, Your Honor.

 5              THE COURT:  So the only issue here is whether the

 6    exception to that 15-year statute of repose applies, and that

 7    is in Section (c) of 16.012, which reads as follows:  "If a

 8    manufacturer or seller expressly warrants in writing that the

 9    product has a useful safe life of longer than 15 years, a

10    claimant must commence a products liability action against that

11    manufacturer or seller of the product before the end of the

12    number of years warranted after the date of the sale of the

13    product by that seller."

14              If I'm unfairly summarizing your position,

15    Mr. Hightower, you should feel very free to correct me.  But

16    essentially what the Plaintiff is arguing is that in some

17    advertising material and one internal document -- and there is

18    a hearsay objection asserted to this, which for the moment I'll

19    ignore -- whereby the allegations are that Remington made

20    statements like "This product will last a lifetime" or "This

21    product will last generations."

22              I think it is undisputed that the word "useful" and

23    the word "safe" either together or separately were not used in

24    any of the material that allegedly provides the basis for the

25    exception.  It is also undisputed that Mr. Flaggert did not see

1    any of these documents nor rely on them.  I take

2    Mr. Hightower's earlier point, his position is that (c) does

3    not require reliance.

4            MR. HIGHTOWER:  And, Judge, if I may --

5            THE COURT:  Yes.

6            MR. HIGHTOWER:  -- your invitation to correct the

7    Court.

8            THE COURT:  Sure.  Yes.

9            MR. HIGHTOWER:  I have no correction, but I would at

10   least put an asterisk or ask the Court to consider that had

11   we -- had we been able to discover this matter, had we been

12   able to ask a Remington 30(b)(6) witness about advertisements

13   or representations or warrants, we cannot know as we sit here

14   today whether Plaintiffs' summary judgment evidence would look

15   exactly as it does or would be significantly better.  We just

16   don't know that.

17           And, obviously, we argue that there's a fact question

18   on this issue and that because there is a fact question on the

19   issue discovery is appropriate, would be appropriate, should be

20   appropriate so that we can explore -- so that we can explore

21   Plaintiffs' possible fitting into part (c) of the exception.

22           THE COURT:  So in the state court action was there

23   discovery?

24           MR. HIGHTOWER:  No, Your Honor.  We -- I think that

25   there was discovery pending when the hearing -- I just -- I

1    would rely on Mr. Jordan's memory more than mine.  But we

2    certainly, I think, as a matter of course and practice would

3    send discovery in a case, and in this case we certainly knew

4    that we were faced with the statute of repose.

5            So I think we sent discovery to Remington in the

6    state court action.  Either it had been objected to and there

7    had been no motion to compel heard, or it just wasn't -- I just

8    don't know the state of that record.  But it certainly would

9    have been our pattern and practice to send discovery in the

10   state court action.  The state court action we felt was not our

11   best shot at New York law, and that's why we abandoned the

12   state court.

13           THE COURT:  Okay.  All right.  Okay.  I take your

14   point.  I don't agree because my view is that under the

15   circumstances there is no reason to provide you with any

16   additional discovery.

17           Your client has -- Mr. Flaggert has confirmed that he

18   is not aware of any -- I'm going to call it a warrant just to

19   avoid the issue of whether that's a warranty or something less

20   that came with the firearm.  And he bought this in 1996.  So I

21   don't think you get to just fish around and try to find

22   something out there beyond what you provided to us from the

23   public domain.

24           Do you have any further argument you want to make,

25   Mr. Hightower?

1          MR. HIGHTOWER:  Sure.  Very briefly, Your Honor.  We

2     think that even the materials we were able to summon and

3     present to the Court without discovery are sufficient to create

4     a fact issue on the plain written language of the exception to

5     the statute of repose, which does not use the word "warranty."

6     It uses the word "warrants."

7          We believe that a jury could and should consider that

8     language juxtaposed with Remington's promises made in

9     advertising and that a jury, a reasonable jury, could find that

10    Remington has, in fact, expressly warranted in writing that its

11    product has a useful life of generations or a lifetime and

12    that, therefore, summary judgment is inappropriate in this

13    case.

14          THE COURT:  So if that is a written -- a warrant in

15    writing --

16          MR. HIGHTOWER:  Yes, Your Honor.

17          THE COURT:  -- when does that ever run out?

18          MR. HIGHTOWER:  Well, we've looked at the life

19    tables.  I understand that question, and they brought it up in

20    their briefing.  What is the number?  Is it 71?  Is it 75?  Is

21    it 78?

22          THE COURT:  Well, I mean, if it's generations, when

23    does that -- how many generations?

24          MR. HIGHTOWER:  Well, at least two.  And then you

25    have to figure out what the average -- you would have to do

1   some math, and you would have to rely on actuarial tables to do

2   that.  I don't think it's a complicated math problem, but you

3   would certainly not -- you certainly wouldn't come up with a

4   precise number on which everyone agreed.

5          THE COURT:  Okay.  All right.  Counsel?

6          MR. JORDAN:  Your Honor, just very briefly.  You hit

7   on exactly the issue.  If the representation -- forget whether

8   it's a warranty.  Forget all of that.  If the representation is

9   generations, the statute itself, the exception itself says if

10   there is a warranty -- if the manufacturer does warrant a

11   period of time longer than 15 years, the action must be

12   commenced -- and I'm quoting here -- before the end of the

13   number of years warranted.

14          The statute's language itself suggests that it has to

15   be a statement at least about a number of years, and otherwise

16   how could any court possibly figure out when the cutoff is?

17   What's a generation?  What's even one generation?  What's even

18   one lifetime?  It would just be impossible.  It would throw the

19   courts into the biggest mess ever trying to figure this out.

20          MR. HIGHTOWER:  If I may, Your Honor, one more.  This

21   is from a deposition of a Remington -- I think a 30(b)(6)

22   witness, June 2nd of 1989.  The testimony is as follows:  "We

23   make a product that lasts generations; lifetimes.  And one of

24   the ongoing problems we had at Remington was having somebody

25   bring in a shotgun that was made in 1932 and asking that it be

1   repaired or parts replaced and being unable to replace those

2   parts.  So we had sort of an implicit agreement with the

3   customer that his gun would last a lifetime and that we would

4   repair it a lifetime."

5           I understand that that doesn't -- that doesn't fit

6   directly with the arguments that Mr. Jordan is making and that

7   the Court has picked up on and is also making.  It just -- and

8   I'm waving the red flag of equity here.  It simply does not

9   seem fair that a company could make a product that lasts for a

10  lifetime, they admit that it lasts a lifetime, they advertise

11  that it lasts a lifetime, and we've got a poorly drafted Texas

12  legislative enactment that doesn't use the word "warranty" and

13  then all of the courts come along and say, well, we're going to

14  give the Texas legislature credit.  They meant to say warranty.

15  There is not an express warranty.  There is no cause of action.

16  And Remington can go on making its product, and we're just --

17  you know, we'll just have to hope for a better legislative

18  session next time.

19          I think it's unfair, Judge.

20          MR. JORDAN:  Well, I just want to make a quick

21  objection to that part that was just read.

22          I don't know.  Is that attached to your summary

23  judgment materials?

24          MR. HIGHTOWER:  It was meant to be if it was not.

25          MR. JORDAN:  I object to that.  I don't think it was.

1    And second of all, it has no reference at all to the Model 700

2    rifle.

3              THE COURT:  All right.  Well, if that wasn't, there

4    are a number of similar kinds of things that are attached to

5    Mr. Hightower's papers.  If that was not, the Court will not

6    permit the document to now be submitted.  But I don't regard

7    any of the matters that were submitted as satisfying 16.012(c).

8              I understand your point, Mr. Hightower, and I think

9    you've done as good a job as you could.  I don't agree with

10   you.  I think that this language expressly warrants in writing,

11   is intended to refer to a warranty that is bolstered by the

12   subsequent reference to the number of years warranted.  And

13   these kinds of statements are not a number of years warranted.

14   They are sort of in the nature of puffery or a general

15   description but not, in the Court's view, a warranty.

16             I don't think, frankly, there's anything unfair about

17   there being a statute of repose.  It's not directed

18   particularly to firearms; it's directed to all statutes -- to

19   all products that are sold in Texas.  And the exception is if a

20   manufacturer says, "My product will last 16 years, 17 years, 18

21   years, 19 years, 20 years," and you have a warranty to that

22   effect, then the 15 years should not be in effect, and I agree

23   with that.  But I don't think that is the situation here.

24             So the Court is of the view that the statute of

25   repose -- Texas statute of repose applies and that the facts do

1   not substantiate the applicability of the exception, and,

2   therefore, the Court grants the Defendant's motion for summary

3   judgment.

4         The Court intends to enter a very brief order that

5   incorporates my findings on the record.

6         MR. HIGHTOWER:  Thank you for holding a hearing on

7   this, Your Honor, and I appreciate your comments.

8         THE COURT:  All right.

9         MR. HIGHTOWER:  This was a tough one for the

10  Plaintiffs.

11        THE COURT:  Thank you.

12        MR. JORDAN:  Thank you, Your Honor.

13        THE COURT:  All right.  Thank you-all.

14        (Hearing adjourned)

15

16

17

18

19

20

21

22

23

24

25

1                                  INDEX

2    Court's ruling.......................................18, 26

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      I, TODD ANDERSON, United States Court Reporter for the

2    United States District Court in and for the Northern District

3    of Texas, Dallas Division, hereby certify that the above and

4    foregoing contains a true and correct transcription of the

5    proceedings in the above entitled and numbered cause.

6      WITNESS MY HAND on this 26th day of May, 2015.

7

8

9
                                /s/Todd Anderson
10                              TODD ANDERSON, RMR, CRR
                                United States Court Reporter
11                              1100 Commerce St., Rm. 1625
                                Dallas, Texas  75242
12                              (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25